__NOT FOR PUBLICATION__

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>v.<br><br>INTELIGO BANK LTD., F/K/A BLUBANK LTD,<br><br>               Defendant. | Adv. Pro. No. 11-02763 (CGM) |

## MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS

<u>**A P P E A R A N C E S**</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Amy E. Vanderwal, Esq. (on the papers)

*Attorneys for Defendant, Inteligo Bank. Ltd.*
WINSTON & STRAWN

1901 L Street, NW
Washington, DC 200036
By:    Heather Lamberg, Esq. (on the papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Inteligo Bank Ltd., f/k/a Blubank Ltd.,

("Inteligo"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks

dismissal for lack of personal jurisdiction, for; and raises the "safe harbor" defense and the "mere

conduit" defense.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by the

Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on October 6, 2011.  (Compl., ECF[1] No. 1).  Inteligo

is a company incorporated under the laws of the Republic of Panama.  (*Id.* ¶ 22).  Via the

complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Inteligo.

(*Id.* ¶¶ 41–44).  When Inteligo received the subsequent transfers at issue, it was a private

financial advisory and banking services company.  (*Id.* ¶ 3).  The subsequent transfers were

derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and

Fairfield Sigma Limited ("Fairfield Sigma").  (*Id.* ¶ 44).  Fairfield Sentry is considered a "feeder

fund" of BLMIS because the intention of the fund was to invest in BLMIS.  (*Id.* ¶ 2).

"[A]pproximately $10,745,161 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Defendant Inteligo."  (*Id.* ¶ 41).  Additionally,

"approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Fairfield Sigma. Thereafter, the equivalent of at

least $72,944 was transferred by Fairfield Sigma to Defendant Inteligo."  (*Id.* ¶ 43).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 11-02763-cgm.

the amount of approximately $3 billion. (*Id.* ¶ 35). In 2011, the Trustee settled with Fairfield

Sentry. (*Id.* ¶ 40). As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate. The Trustee then commenced a number of adversary

proceedings against subsequent transferees, like Defendant, to recover the approximately $3

billion in missing customer property. (*Id.* ¶ 35).

In its motion to dismiss, Inteligo argues that this Court lacks personal jurisdiction, that

the safe harbor defense bars the Trustee's recovery of this transfer, that it is a "mere conduit."

The Trustee opposes the motion to dismiss.

### Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction. In the Complaint,

the Trustee argues that Defendant purposefully availed itself of the laws of the United States and

New York. (Compl. ¶¶ 6–8).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.

Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that the Grosvenor Defendants "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma." (Compl. ¶ 6).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendants in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery).  That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y.

2012).

Inteligo argues that the Trustee has not alleged that it has sufficient contacts with New York. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that the Grosvenor Defendants "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma." (Compl. ¶ 6). And that "Defendant Inteligo knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma, both Fairfield Greenwich Group ('FGG') managed Madoff feeder funds." (*Id.* ¶ 6). The Trustee has also alleged that Fairfield Sentry invested 95% of its assets in BLMIS and that Fairfield Sigma invested 100% of its assets in Fairfield Sentry. (*Id.* ¶ 2). Additionally, the Trustee has alleged that Inteligo "entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent the subscription agreement to FGG's New York City office, wired funds to Fairfield Sentry through a bank in New York, and met with its Fairfield Sentry account representatives in FGG's New York City office. Defendant Inteligo thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Compl. ¶ 7).

In response to the motion to dismiss, the Trustee has provided a copy of Inteligo's subscription agreement[2] with Fairfield Sentry. (Subsc'n Agmt., Vanderwal Decl., ex. 3, ECF No. 121). By signing the subscription agreement, Inteligo agreed to the terms in Fairfield Sentry's Private Placement Memorandum. (*Id.* at ¶ 1). Fairfield Sentry's Private Placement Memorandum advises that Fairfield Sentry "will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities, Inc." (Fairfield PPM 6, Vanderwal Decl., ex. 9, ECF No. 121). The Private Placement Memorandum goes on to

---

[2] The subscription agreement is in the name of Blubank, Ltd. Blubank, Ltd. changed its name to Inteligo in 2010. (Vanderwal Decl., ex. 3, ECF No. 121).

state that "the Manager[3] has established a discretionary account for [Fairfield Sentry] at

Bernard L. Madoff Investment Securities (sometimes referred to as 'BLM'), a registered broker-

dealer in New York, New York who utilizes a strategy described as 'split strike conversion', to

which it allocates the predominant portion of the Fund's assets." and that "[a]ll investment

decisions in the account at BLM are effected by persons associated with BLM." (*Id.*)  The

document continues: "BLM acts as a principal in connection with its sale of equity securities to

the Fund[4] and the purchase of equity securities from the Fund. BLM acts as a market-maker in

the stocks purchased and sold by the Fund. These market making activities enable BLM to trade

with the Fund as principal." (*Id.* at 7).  The subscription agreement also requires subscribers to

wire transfer funds into a New York bank account in order to purchase shares in Fairfield Sentry.

*Id.*  Inteligo agreed to be bound by these documents when it signed its subscription agreement.

(Subsc'n Agmt. ¶ 2, Vanderwal Decl., ex. 3, ECF No. 121).  The Trustee has also provided a

copy of a "short form subscription agreement" signed by Inteligo that "reaffirms each and every

representation and covenant made by the undersigned in the original Subscription Agreement."

(Vanderwal Decl., exs. 7 & 8, ECF No. 121).

Inteligo also signed a subscription agreement with Fairfield Sigma, which incorporated

Fairfield Sigma's Private Placement Memorandum.  (Vanderwal Decl., ex. 5, ECF No. 121).

Fairfield Sigma's Private Placement Memorandum states: "When F[airfield] S[igma] L[imited]

invests with Bernard L. Madoff Investment Securities or in a Non-SSC Investment vehicle, it

will not have custody of the assets so invested. Therefore, there is always the risk that the

personnel of any entity with which the Fund invests could misappropriate the securities or funds

(or both) of the Fund." (Sigma PPM 20, Vanderwal Decl., ex. 13, ECF No. 121).  Inteligo was

---

[3] "Manager" is defined as "Fairfield Greenwich Limited" in the information memorandum.
[4] "Fund" is defined as "Fairfield Sentry Limited" in the Private Placement Memorandum.  (Priv. P. Mem. at ii, Vanderwal Decl., ex. 9, ECF No. 121).

aware that it was invested in BLMIS, not only from the fund documents, but also because

Madoff was discussed in a conference call that took place on August 25, 2005. (Vanderwal

Decl., ex. 29, ECF No. 121).

Fairfield's Private Placement Memorandum advises that FGG maintains its principal

office in New York. (Priv. P. Mem. 5, Vanderwal Decl., ex. 9, ECF No. 121). In February

2004, Inteligo met in New York with FGG regarding its investments in Fairfield Sentry. (*Id.*).

That meeting took place on February 20, 2004. (Vanderwal Decl., ex. 26, ECF No. 121).

Inteligo also met with FGG in New York on May 16, 2005. (Vanderwal Decl., ex. 27, ECF No.

121).

The Trustee has provided documents indicating that Inteligo communicated regularly

with FGG's New York office, via email. (Vanderwal Decl., ECF No. 121). The Trustee has

provided the Court with a copy of an email from Inteligo to a Fairfield Greenwich Group

employee, who worked in the New York office, and had an email address ending @fgg**us**.com.

(*Id.*) (emphasis added to highlight "U.S." email address). In that email, Inteligo asks FGG to

send them the subscription agreement to invest in Fairfield Sigma. (*Id.*); In another email,

Inteligo emails FGG to get permission to invest €39,370.00 in Fairfield Sigma. (Vanderwal

Decl., ex. 6, ECF No. 121). In another email, Inteligo received Fairfield Sentry's offering

memorandum from Veronica Barco with a signature that includes her New York address.

(Vanderwal Decl., ex. 11, ECF No. 121). The Trustee has also provided several emails FGG

sent to Defendant regarding Fairfield Sentry's returns. (Vanderwal Decl., exs. 31–38, ECF No.

121).

Inteligo used a New York bank account to receive the redemption payments at issue here.

(Vanderwal Decl., exs. 21–23, ECF No. 121). Grosvenor Private requested that redemptions of

its shares in Fairfield Sentry be paid to its JP Morgan Chase account and the bank's address was

listed as "4 Chase Metrotech Center, Brooklyn, NY 11245." (*Id.*). Where a defendant chooses

to use a United States bank account to received funds, exercising personal jurisdiction over the

defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of*

*Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016);

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618

(S.D.N.Y. 2022) (a bank submits to personal jurisdiction in the United States when it is "free to

accept or reject the proposed terms" and still chooses to use a United States bank account); *see*

*also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19,

2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of

New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank

account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y.*

*Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18,

2012)("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's

use of a correspondent bank account in New York where the use of that account was held to lay

at the very root of the plaintiff's action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank,*

*SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d

374, 382–83 (S.D.N.Y. 2013) (same).

 The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d.

Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285

(2014).  Defendants "intentionally tossed a seed from abroad to take root and grow as a new tree

in the Madoff money orchard in the United States and reap the benefits therefrom."  *Picard v.*

*Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012).  Defendant's

alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy."  *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendants for monies

they received from the Fairfield Sentry and Fairfield Sigma.  (Am. Compl. ¶¶ 54–58).  These

allegations are directly related to their investment activities with BLMIS via Fairfield Sentry and

Fairfield Sigma.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr.

S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as

direct investors in a BLMIS feeder fund arose from the New York contacts such as sending

subscription agreements to New York, wiring funds in U.S. dollars to New York, sending

redemption requests to New York, and receiving redemption payments from a Bank of New

York account in New York, and were the proximate cause of the injuries that the Trustee sought

to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendants is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendants, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable. Defendants are not burdened by this litigation.

Defendants actively participated in this Court's litigation for over ten years. They are

represented by U.S. counsel, held bank accounts in New York, and submitted to the jurisdiction

of New York courts' when they signed subscription agreements with the Fairfield Funds.[5]

(Compl. ¶ 7). The forum and the Trustee both have a strong interest in litigating BLMIS

---

[5] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the
subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this
Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under
British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a
relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry
v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB),
2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement
does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v.
Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendants intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendants used a New York bank account, the Trustee has met his burden of alleging jurisdiction over each transfer that received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).

     The Trustee is seeking to recover subsequent transfers made to Defendants by Fairfield

Sentry and Fairfield Sigma.  Inteligo has raised two affirmative defenses in its motion to dismiss:

the "safe harbor" and the "mere conduit" defenses.   "An affirmative defense may be raised by a

pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment

procedure, if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue*

*Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  "Not only must the facts supporting the defense appear

on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted

only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim that would entitle him to relief."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)

(cleaned up).  A "plaintiff is entitled to all reasonable inferences from the facts alleged, not only

those that support his claim, but also those that defeat the [affirmative] defense."  *Id.*

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

     Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of those funds. *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-

01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6,

2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the

Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers

qualified as payments made "in connection with" securities contracts between BLMIS and its

customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d

Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the

transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No.

22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any

transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in

connection with a security agreement" and therefore, § 546(e) cannot apply.[6] *Id.*

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors. If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account. In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016)

(internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In*

*re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by §

---

[6] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains. The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint[7] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

---

[7] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

  "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that

Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *See Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Trustee's allegations in the Fairfield

Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

In *Fairfield III*, this Court applied the safe harbor to redemption payments made by

Fairfield Sentry to its shareholders. *Fairfield III* is inapplicable in this case for two reasons.

First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is

not binding on the Court in this adversary proceeding; whereas the district court's decision in

*SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR),

2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not

apply in this case, is binding on the Court on this issue. Second, the issue in *Fairfield III* is not

comparable. In *Fairfield III*, the Court found that the plaintiffs had not met their pleading burden

because the complaint stated that Fairfield Sentry did not have knowledge of BLMIS' fraud and

the plaintiffs were not permitted to amend their complaints. *Fairfield III*, 2020 WL 7345988, at

*9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint alleges that the [Fairfield]

Funds were duped, believing that their BLMIS investments were worth what the BLMIS

monthly statements showed. The Funds were the transferors and if they were duped, they could

not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming

investments at prices they believed to be accurate."). In *Fairfield III*, Fairfield Sentry was the

initial transferor, not the initial transferee as it is here. And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied. Here, the Trustee has sufficiently plead

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Inteligo has also raised the safe harbor defense in connection with its contract with

Fairfield Sentry. Whether the safe harbor applies to the initial transfers under the theory that

BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contract

with Defendant (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the pleadings. The district court has already instructed this Court that such a determination is fact-specific and that the Court should make such a determination with the benefit of a "full factual record." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *24 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendants on account of the securities contracts between Fairfield Sentry and Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer. "[H]e recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

**Mere Conduit Defense**

The "mere conduit" defense arises in the context of the safe harbor provision of the Bankruptcy Code. 11 U.S.C. § 546(e). It bears repeating that "the safe harbor prohibits the

trustee from avoiding transfers that are margin payments or settlement payments made by or to

(or for the benefit of) certain entities including commodity brokers, securities clearing agencies,

and financial institutions." *FTI Consulting, Inc. v. Merit Mgmt. Grp., LP*, 830 F.3d 690, 691 (7th

Cir. 2016) (cleaned up), *aff'd and remanded*, 200 L. Ed. 2d 183, 138 S. Ct. 883 (2018); 11

U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial*

transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018)

(emphasis in original).

      Prior to the Supreme Court's decision in *Merit*, there was a conflict among circuits as to

whether the safe harbor protected transfers that were conducted through financial institutions

where the financial institution was not the transferor nor the initial transferee but only a "mere

conduit" between the transferor and transferee. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, __

U.S. __, 200 L. Ed. 2d 183, 138 S. Ct. 883, 892 (2018).   The Supreme Court determined that

conduits need not be considered in determining whether the safe harbor applies. *Id.* at 888.  And

that only the overarching transfer that the Trustee seeks to avoid matters.  *Id.*

      The transfer that a trustee seeks to avoid can only be the initial transfer; that is, the

transfer the trustee can avoid using his avoidance powers set forth in §§ 544, 545, 547, or 548 of

the Bankruptcy Code. *Id.*  In this case, the transfers that the Trustee sought to avoid are the

transfers of BLMIS customer property from BLMIS to Fairfield Sentry.  (Compl. ¶¶ 34–40).

The only entity that may claim to be a "mere conduit" would be an intermediary that assisted

BLMIS in transferring the funds to Fairfield Sentry.  For example, if BLMIS transferred those

funds from itself to Fairfield through an intermediary bank that intermediary may argue that it

was a mere conduit.  But here, where Inteligo is clearly a subsequent transferee of Fairfield

Sentry, it is not possible for it to raise a mere conduit defense.

Inteligo makes several other illogical arguments based upon the Supreme Court's decision in *Merit*. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, __ U.S. __, 200 L. Ed. 2d 183, 138 S. Ct. 883, 891 (2018). It argues that either Inteligo or its customers should be considered the initial transferee for purposes of the safe harbor, rather than Fairfield Sentry. Memo. L. at 16–18, ECF No. 117. These arguments are meritless. The relevant transfers in question for purposes of the safe harbor are the payments made by BLMIS to its customer. *See Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411, 417 (2d Cir. 2014) ("We similarly have little difficulty concluding that the payments BLMIS made to its customers were made "in connection with" the securities contracts identified above."). Fairfield Sentry is the alleged customer of BLMIS, not Inteligo. (Compl. ¶ 2) (alleging that Fairfield Sentry "had direct customer accounts with BLMIS's investment advisory business"). Therefore, Fairfield Sentry is the initial transfer of BLMIS customer property, not Inteligo and not Inteligo's customers. Nothing in the Trustee's Complaint suggests that Inteligo is a mere conduit.

**Good Faith**

To the extent that Inteligo raises the affirmative defense of good faith in footnote 6 of its memorandum of law, the burden of proving good faith falls squarely on Inteligo and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble. 2 Bankruptcy Desk Guide § 19:105. The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th

171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022). And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted). Discovery is required on this issue.

### Conclusion

For the foregoing reasons, the Grosvenor Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

**Dated: December 9, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**